UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

ADAM T. LALONE,

               Debtor.

_____/

Case No. 24-03065-swd
Hon. Scott W. Dales
Chapter 12

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                      Chief United States Bankruptcy Judge

## I.      INTRODUCTION

A blueberry farmer and his wholly owned limited liability company each filed a chapter 12 bankruptcy petition, and each sought an order under 11 U.S.C. §§ 327(a) and 1203 approving retention of the same attorney to represent them as debtors in possession in their respective, related but not consolidated, cases.[1] The United States Trustee ("UST") objected to the proposed retention in both cases. The court held a hearing on January 22, 2025, in Kalamazoo, Michigan, which proposed counsel, James Oppenhuizen, Esq., and counsel for the United States Trustee attended. After argument, and without any request to conduct an evidentiary hearing, the court took the Applications under advisement. For the following reasons, the court will deny both.

## II.     JURISDICTION AND AUTHORITY

The court has jurisdiction to consider the Applications under 28 U.S.C. § 1334(a) and (e)(2). Resolving disputes about the retention of bankruptcy professionals lies at the core of the

---

[1] Debtor Adam T. Lalone (the "Debtor") filed Debtor's Application for Entry of an Order Authorizing Employment and Retention of Oppenhuizen Law Firm, PLC, as Counsel to Debtor (the "Lalone Application," ECF No. 20). Mr. Lalone, as sole member of Blue Harvest Farms, LLC, also filed a similar application on behalf of Blue Harvest Farms, LLC (the "Blue Harvest Application," ECF No. 27 in Case No. 24-03064, and with the Lalone Application referred to as the "Applications"). For convenience, the court will refer to Blue Harvest Farms, LLC as "Blue Harvest."

bankruptcy court's authority under 28 U.S.C. § 157(b)(2)(A) and the reference from the United States District Court under L.Gen.R. 3.1(1) (W.D. Mich.) and 28 U.S.C. § 157(a).

Congress has invested the UST, as "watchdog," with statutory standing to challenge the Applications. 11 U.S.C. § 307; *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (United States Trustee acts as "watchdog").

Initially, the court notes that after Blue Harvest filed the Blue Harvest Application, the court dismissed the company's chapter 12 case pursuant to stipulation, essentially for failure to document adequate insurance. The UST and Mr. Oppenhuizen agree that the dismissal does not moot the Blue Harvest Application, largely because Mr. Oppenhuizen's right to compensation for his work on Blue Harvest's behalf likely depends (inside or outside of bankruptcy) on his getting appointed under 11 U.S.C. § 327(a)[2] in the first place. *Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 44 F.3d 1310, 1320 (6th Cir. 1995); *Dery v. Cumberland Casualty & Surety Co. (In re 5900 Assocs., Inc.)*, 468 F.3d 326, 330 (6th Cir. 2006) (claim of attorney appointed as counsel to chapter 11 debtor in possession was unenforceable post-bankruptcy because bankruptcy court did not approve the claim under § 330(a)); *cf. Bingham Greenebaum Doll LLP v. Glenview Health Care Facility, Inc. (In re Glenview Health Care Facility, Inc.*), 620 B.R. 582, 585 (B.A.P. 6th Cir. 2020) (dissolution of creditors' committee did not moot appeal from denial of counsel's appointment application given the relationship between appointment and compensation, even though dissolved committee no longer required representation).

The court finds that dismissal of the Blue Harvest case does not render the Blue Harvest Application moot, given Mr. Oppenhuizen's pecuniary interest in getting appointed and, ultimately, paid in one forum or another.

---

[2] References to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532, unless otherwise indicated.

## III.   ANALYSIS

The attorney-client relationship in bankruptcy is subject to both state and federal regulation. State and federal law both respect a client's choice of counsel, supplanting that choice only in cases of conflict, overreach, or other significant policies. *Cf.* 28 U.S.C. § 1652 ("The laws of the several states, except where … Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."). When debtors in possession, such as Mr. Lalone and Blue Harvest, seek approval of their choice of counsel to represent them not merely as debtors, but as debtors in possession (a term of art), the federal bankruptcy interest arises. Congress has expressed its policy choices in this area in several ways.

First, Congress has invested chapter 12 debtors in possession with many of the rights and powers of a chapter 11 trustee. 11 U.S.C. § 1203. Second, because a chapter 11 trustee may retain professionals (including counsel) under § 327(a) to advise in meeting the trustee's obligations to the bankruptcy estate and carrying out the duties that Congress has assigned to the chapter 11 trustee, a chapter 12 debtor in possession may likewise retain counsel under that section. Section 327(a) provides as follows:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). This provision has a dual aspect: the proposed professional must not "hold or represent an interest adverse to the estate," and he or she must qualify as a "disinterested person" -- another term of art under the Bankruptcy Code. The term "disinterested person" means, in relevant part, someone who:

… does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14)(C).[3] Courts have recognized considerable "overlap" between the twin prongs of § 327(a) and the definition of "disinterested person" in § 101(14). *See, e.g., In re BH & P, Inc.,* 949 F.2d 1300, 1314 (3rd Cir. 1991). These overlapping requirements ensure that "'all professionals … tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'" *In re Greystone Holdings, L.L.C.*, 305 B.R. 456, 460 (Bankr. N.D. Ohio 2003) (citing *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836 (7th Cir.1998)).

Blue Harvest and Mr. Lalone, as the applicants under § 327(a), must bear the burden of establishing Mr. Oppenhuizen's qualification for appointment. *In re Interwest Business Equipment, Inc.*, 23 F.3d 311, 318 (10th Cir. 1994). At oral argument, the parties agreed that the Applications will succeed or fail together, and that the court cannot simply cherry-pick which application to grant if it concludes that Mr. Oppenhuizen's relationship with either debtor is disqualifying. They argued the merits of the Applications as raising two sides of the same coin.

The UST opposes the Applications in both cases, Mr. Lalone's and Blue Harvest's, arguing that proposed counsel, Mr. Oppenhuizen, is not a "disinterested person" because he represents both estates and the estates have adverse interests.[4] The UST points to several examples of intertwined affairs and interdebtor claims between Mr. Lalone and his wholly owned limited liability company, creating conflicts or potential conflicts, or at least requiring independent scrutiny. Mr. Lalone

---

[3] The UST has not sought to disqualify Mr. Oppenhuizen under § 101(14)(A) or (B) but has instead focused his argument under part (C), presumably raising a "direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason," namely his relationship with Blue Harvest's sole shareholder, Mr. Lalone.

[4] The UST filed the United States Trustee's Objection to Debtor's Application for Entry of an Order Authorizing Employment and Retention of Oppenhuizen Law Firm, PLC, as Counsel to Debtor (DKT No. 20) (ECF No. 26) and a similar objection in the Blue Harvest case, albeit after the court dismissed that case (ECF No. 56 in Case No. 24-03064).

challenges the UST's negative inferences as uninformed speculation, but he does not contradict the historical facts.

For example, Mr. Lalone lives in a residence that Blue Harvest owns and relies on Blue Harvest to pay the mortgage debt and utilities. Apparently, Mr. Lalone has no lease or rental agreement with Blue Harvest. The UST suggests that Blue Harvest's creditors deserve some kind of reckoning for this informal arrangement.

The UST also relies on the Solemn Declaration of Adam T. Lalone (the "Declaration," ECF No. 17 Case No. 24-03064) where Mr. Lalone states that he has infused significant capital into Blue Harvest, and the company owes unpaid wages to its employees, including Mr. Lalone. At oral argument, Mr. Oppenhuizen explained that from time to time, if Blue Harvest lacked funds to make payroll, Mr. Lalone would forego a paycheck so the company could pay its employees. Whether this omission always resulted in a debt, or instead a capital contribution, is anyone's guess. Nevertheless, to the extent that Mr. Lalone forgoes those wages, his bankruptcy estate and creditors may suffer, according to the UST.

The UST also raises an eyebrow about another of Mr. Lalone's wholly owned businesses, Patriot Foods, Inc. ("Patriot"), which, like Mr. Lalone, occupies a portion of Blue Harvest's real estate, gratis and sans lease. According to the UST, Patriot benefits (as does Mr. Lalone, derivatively perhaps) to the detriment of Blue Harvest and its creditors. Again, like Mr. Lalone's housing situation, the arrangement is informal, perhaps depriving Blue Harvest of rental income it could use for its reorganization, according to the UST's hypothesis.

Patriot's role in a substantial transaction involving one million pounds of unprocessed blueberries further complicates the role of Mr. Oppenhuizen as Mr. Lalone's and Blue Harvest's proposed counsel. More specifically, as Blue Harvest discloses in its schedules, Carolina Berry

Group, LLC, shipped fresh blueberries to Patriot, who processed and transferred them to Blue Harvest, who then sold them to Shoreline Fruit, LLC, apparently without paying the producer. Given the nature of the goods, Blue Harvest posits in its own schedules that Carolina Berry Group, LLC, may have a claim against it as statutory trustee under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a-499t. (ECF No. 10 (Statement of Financial Affairs, #21) in Case No. 24-03064). That may be so, but it is also true Carolina Berry Group may assert the same claim against Mr. Lalone under PACA, if he was in a position to control PACA trust assets (like the proceeds of the sale of Carolina Berry's berries) and failed to preserve those assets. *Arava USA, Inc. v. Karni Fam. Farm, LLC*, 474 F. App'x 452, 453 (6th Cir. 2012) (holding that corporate insider, though not a statutory trustee, may nevertheless be personally liable to a producer for mishandling PACA trust assets). In other words, the allocation of potential PACA liability among the two bankruptcy estates (and perhaps Patriot) may present thorny questions for a lawyer who represents both estates, where creditors of one may have an interest in allocating blame (and liability) to another.

Other examples of their interrelatedness involve a common creditor, West Michigan Community Bank. Mr. Lalone has disclosed that Blue Harvest's failure to make payments put Mr. Lalone's personal debt to the bank into default because of cross-default provisions in the various loan documents. The UST opines, albeit vaguely, that this might lead to litigation. Mr. Lalone also states that he caused Blue Harvest to make a substantial payment ($2.5 million) to the bank prior to filing, which resulted in the company's inability to fund operations, including payroll and payroll taxes. Thus, Mr. Lalone may have personal liability for Blue Harvest's taxes.

Several lawsuits in which Mr. Lalone and Blue Harvest have been alleged (or adjudged) to be jointly and severally liable to the respective plaintiffs add further complexity for allocating

ultimate responsibility among joint debtors. Mr. Lalone also notes that he and Patriot have guaranteed substantial amounts of Blue Harvest's debt, likely giving rise to subrogation claims from his estate against Blue Harvest's estate, if either is called upon to honor the guaranty.

Mr. Lalone describes the close-knit financial relationships between himself and his various entities, even highlighting his own preference exposure:

> As stated above, I am the sole member of Blue Harvest Farms, LLC. *There are a number of payments from Blue Harvest Farms, LLC to me during the year prior to the bankruptcy filing*. I also deposited a significant amount of my money, and money from my other businesses, GNP Farms, LLC and Patriot Foods, Inc., into Blue Harvest Farms, LLC's bank accounts or made payments on Blue Harvest Farms, LLC's behalf. …
>
> There are minimal, if any creditors that we do not share or which are not listed on both my schedules and Blue Harvest Farms, LLC's schedules.
>
> Nearly all, if not all, of the major creditors in the two cases are shared. …

Declaration at ¶ 17(a-d) (emphasis added). The court certainly appreciates the candor and the fullness of Mr. Lalone's disclosure, but the recitation points against sharing bankruptcy counsel, not towards it.

The UST argues that these relationships, and others, make it impossible for Mr. Oppenhuizen to render disinterested advice to Blue Harvest given his representation of Mr. Lalone, and vice versa. The watchdog opposes both Applications.

To blunt the challenge, Mr. Lalone offers innocent explanations for the rent-free arrangements involving Mr. Lalone's and Patriot's occupancy of Blue Harvest's real estate, and for many of the interdebtor obligations (including, as noted above, Mr. Lalone's occasional advances to his company to enable it to meet its obligations to employees and others). He says that these interrelationships benefit both debtors, are common in closely held enterprises outside of bankruptcy, and have the approval of both debtors in this case. In minimizing the supposed

conflicts, of course, Mr. Lalone straddles both sides of these arrangements, as would Mr. Oppenhuizen, if the court were to approve the Applications.

More formally in responding to the UST's objection to common counsel, Mr. Lalone and Blue Harvest invoke the seemingly more flexible standard of § 327(c), which requires disqualification only in case of *actual*, not potential, conflicts arising from proposed counsel's representation of a creditor. 11 U.S.C. § 327(c). Indeed, since the addition of § 327(c) to the Bankruptcy Code in 1984, "[t]he existence of interdebtor claims is … no longer an automatic ground for disqualification of counsel" because § 327(c) "focuses the inquiry upon whether there is an actual conflict of interest." *In re BH & P, Inc.*, 949 F.2d at 1314.

As Mr. Lalone and his proposed counsel point out, a professional "is not disqualified for employment under this section [327(a)] solely because of [his] employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c). *See also In re M&P Collections*, 599 B.R. 7, 12 (Bankr. W.D. Ky. 2019) (adopting a "wait and see" approach to potential conflicts, rather than a bright line prohibition against representing debtors with interdebtor claims).[5] Certainly, the practicality that inheres in most bankruptcy courts recommends this approach, but it also creates serious risk for any counsel who, it later turns out, should have been disqualified. *See* 11 U.S.C. § 328(c); *Federated Dep't Stores*, 44 F.3d at 1320. Nevertheless, it is also true that the absence of "actual conflict" does not mandate

---

[5] The Debtors heavily rely on this case, but Judge Stout, the opinion's author, took pains to explain that in his case "there is no on-going reorganization where the Debtors interests may be competing against each other as the case progresses." *M&P Collections*, 599 B.R. at 13. Notwithstanding dismissal of the Blue Harvest case, it seems relatively clear that Mr. Lalone will pursue reorganization and that Blue Harvest remains a going concern. As a result, the Debtors' interests "may be competing against each other," making *M&P Collections* distinguishable, albeit otherwise persuasive.

approval of appointment in cases involving intercompany claims; the question is fact specific and committed to the court's discretion. Many courts wisely eschew bright lines in this area.

The court recognizes that Mr. Lalone is not, in court papers, pressing Blue Harvest to repay his wage or other claims, and that Blue Harvest is not knocking on Mr. Lalone's or Patriot's doors for back rent. Mr. Lalone, too, has offered plausible benefits inuring to Blue Harvest from having Mr. Lalone live on site to keep his eye on the freezers and other equipment, and to save on 24 hour security services. From these conceivable synergies and cost savings, and from the absence of live demands by one debtor against another, one might infer (as Mr. Oppenhuizen argues) that the UST's hypothesized conflicts are not "actual," opening § 327(c) as an avenue for blessing his dual representation.

On the other hand, one might also infer that Mr. Lalone's control over Blue Harvest could explain the absence of a live controversy, since Mr. Lalone as the sole member of Blue Harvest, is undoubtedly calling the shots and almost certainly has an interest in maintaining the *status quo* of rent-free living, with utilities to boot. A creditor might justifiably wonder, in other words, whether the absence of conflict has less to do with the merits of the potential dispute and more to do with the shared management of the potential contestants. Creditor perception, though not controlling, matters.

Indeed, when headlines and newsfeeds bemoan ethical lapses by lawyers and judges alike, a stricter "appearance of impropriety standard" may still have some use in bankruptcy court. Nancy B. Rapoport, Am I My Colleague's Keeper When It Comes to Disclosing Connections?, 40 EMORY BANKR. DEV. J. 333 (2024) (discussing ethical lapses by former bankruptcy judge in the Southern District of Texas); *In re BH & P, Inc.*, 103 B.R. 556, 565 n.5 (Bankr. D.N.J. 1989) ("In a time when lawyers, fiduciaries and even judges are sometimes convicted of crimes arising

from various types of breach of fiduciary duty, and when lawyers consistently rank at the same level as used car salesmen in public opinion polls as to the integrity of various occupations, the courts have a duty to encourage public confidence in the integrity of the judicial system wherever possible."), *aff'd in relevant part*, 119 B.R. 35 (D.N.J. 1990), *aff'd*, 949 F.2d 1300 (3d Cir. 1991).

It is fair to say that § 327(c) works best when proposed counsel represents an unrelated creditor -- a bona fide and independent third party. Indeed, the pre-Code history of that section suggests a more limited application of that subsection to discrete matters involving representation of a shareholder or creditor that might not ripen into a conflict and where another competent attorney is not available. *In re BH & P, Inc.,* 949 F.2d at 1314 n.14 (citing 2 *Collier on Bankruptcy,* ¶ 327.03[4], at 327–65 (15th ed.)). The record here, including Mr. Lalone's Declaration but also Schedule H and the Statement of Financial Affairs, shows numerous and pervasive potential conflicts, transactions, and relationships exciting suspicion and requiring investigation -- including Mr. Lalone's preference exposure, challenges to his living arrangements, subrogation and indemnity concerns, reckonings about possible mismanagement relating to Blue Harvest's insurance, tax, PACA, and other obligations. Although § 327(c) may require an actual live conflict among "rival" claimants in the words of some courts,[6] the requirement of "disinterestedness" (which counsel must also meet) is more prophylactic. As one court aptly observed, "dual representation may be a breeding ground for precisely the conflicts of interest disallowed under § 327(c)." *In re Bryant*, Case No. 11–02749–8–SWH, 2011 WL 5909552 (Bankr. E.D.N.C. June 15, 2011) (citations omitted).

The court is not suggesting that "where there's smoke, there's fire," only that creditors must be able to trust that if there is a fire, a disinterested professional may see fit to break the glass and

---

[6] *See, e.g., Greystone Holdings*, 305 B.R. at 461 (citing cases).

pull the alarm. Without casting aspersions on Mr. Oppenhuizen -- a justifiably valued member of our bar -- the court must disqualify him from representing either debtor, given his relationships with both. The constellation of connections, co-obligations and controversies, contingent or concrete, prevent the Debtors from meeting their burden of proving his disinterestedness. *Interwest Business Equipment*, 23 F.3d at 318.

This is not a case in which the court disqualifies Mr. Oppenhuizen because of interests or roles he himself holds, either as a creditor, an equity security holder, insider, director, officer, or employee of a debtor. 11 U.S.C. § 101(14)(A) and (B). He holds no such roles. Rather, the disqualifying connections and obligations arise, in the main, from Mr. Lalone's relationships, his imminent or actual conflicts with Blue Harvest, obstacles that in all likelihood would not preclude a single firm from representing the single member and his wholly owned company, were the clients not debtors in bankruptcy.[7] Nevertheless, both have filed for bankruptcy relief and their creditors' interests have ascended (along with the court's interest in the integrity and perception of the collective proceedings).

A casual, even rational, observer may be forgiven for asking how the court can rely on Mr. Lalone's entanglements to disqualify Mr. Oppenhuizen from involvement as counsel in this case, yet permit Mr. Lalone to remain as debtor in possession. Why is the court holding the attorney-agent to a higher standard than the client-principal? The short answer is that Congress holds each to a different standard.

For example, Congress presumes that debtors in chapter 12 cases, as in chapter 11 cases, should remain in possession of estate property and exercise many of the rights and powers of a

---

[7] *See* 1 Collier, Compensation, Employment & Appointment of Trustees & Professionals, ¶ 1.03 (2024) ("broad spectrum representation [of corporation and 100% shareholder by a single firm] hardly runs afoul of the Code of Professional Responsibility or the Rules of Professional Conduct" but "the case law under the Bankruptcy Code runs overwhelmingly against approving that firm's representation of the chapter 11 debtor in possession").

trustee. No court appointment or qualification is necessary and prebankruptcy management remains in possession by default (pun intended). The decision perhaps reflects a belief in the entrepreneurial spirit and risk-taking of American business, and the business judgment rule. This may explain why the law might discourage the appointment of an attorney for want of disinterestedness, but let the client continue as debtor in possession except upon a showing of "cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor…." 11 U.S.C. § 1204(a). Perhaps Congress tolerates a lack of disinterestedness among reorganizing debtors in possession precisely because it assumes that these debtors will have the benefit of independent, disinterested, professional advice. *In re Roger J. Au & Son, Inc.*, 65 B.R. 322, 335 (Bankr. N.D. Ohio 1984) ("One of the roles of an attorney for a debtor in possession is to act, in effect, as a counterweight to the insiders' tendency to favor their interests above others in the reorganization process."), *aff'd sub nom. Roger J. Au & Son, Inc. v. Aetna Ins. Co.*, 64 B.R. 600 (N.D. Ohio 1986).

In countenancing the disparate standards between client and counsel, Congress likely takes comfort in knowing that every chapter 12 case benefits from the service of a well-vetted panel trustee (as in the current cases) or a disinterested person who serves as trustee if a panel trustee is not available. 11 U.S.C. § 1202(a). Indeed, Congress has enjoined the chapter 12 trustee to participate in certain key aspects of a case (§ 1202(b)(3)) and, if necessary and with the court's approval, to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan," and file a report. 11 U.S.C. § 1202(b)(2) (incorporating duties under § 1106(a)(3) and (a)(4)). Of course, the watchful eye of the UST also tends to ensure fidelity to the rule of law, as the current case confirms.

IV.    CONCLUSION AND ORDER

One final observation seems in order, given the concern the court expressed on the record during the hearing that disapproving the Lalone Application would leave Mr. Lalone without benefit of counsel. It is perhaps more accurate to say that today's decision precludes Mr. Oppenhuizen from representing Mr. Lalone in his fiduciary capacity as debtor in possession, but nothing precludes Mr. Oppenhuizen from advising Mr. Lalone (an individual debtor) in connection with this case or, for that matter, seeking compensation for doing so. 11 U.S.C. § 330(a)(4)(B); 28 U.S.C. § 1652 (State law supplies rule of decision). As in cases under chapter 7 and 13, the Bankruptcy Code envisions no role for the court in an individual debtor's selection of counsel in the first instance. The court's authority to review fees under § 329 and § 330(a)(4)(B) provides ample safeguards to ensure that today's decision does not leave Mr. Lalone unprotected, or Mr. Oppenhuizen, perhaps, uncompensated for his work on the former's behalf.

Today's decision, however, does doom Mr. Oppenhuizen's recovery of fees for representing Blue Harvest as a debtor in possession because "a valid appointment under § 327(a) is a condition precedent to the decision to grant or deny compensation" for representing an estate or debtor in possession. *Federated Dep't Stores*, 44 F.3d at 1320.

The court will deny the Lalone Application and enter a separate order in the related docket denying the Blue Harvest Application.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Lalone Application (ECF No. 20) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter a copy of this Memorandum of Decision and Order in the docket for Blue Harvest Farms, LLC, Case No. 24-03064.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Adam T. Lalone, James R. Oppenhuizen, Esq., Laura J. Genovich, Esq., chapter 7 trustee, and the United States Trustee.

END OF ORDER

**IT IS SO ORDERED.**

**Dated January 29, 2025**



Scott W. Dales
United States Bankruptcy Judge